REPRESENTATIVES OF DUPREE, plaintiffs in error *vs.* B. ADKINS, sheriff *et al.*, defendants in error.

(McCAY, Judge, finding by the argument that he was related to one of the parties, declined to act further in the cause.)

As between the judgment creditors of an intestate, who obtained their judgments after the intestate's death, in a contest for money in the hands of the sheriff, raised by the sale of the intestate's property, the oldest judgment is entitled to be first paid, in the absence of any evidence of the insolvency of the intestate's estate or any reason shewn why the money should not be paid to the oldest judgment as between the contesting parties before the Court.

Distribution of Estates. Lien of Judgments. Tried before Judge ANDREWS. Oglethorpe Superior Court. April Term, 1871.

Dupree obtained a judgment against the administrators of one Chandler, deceased, and subsequently other parties also obtained judgments against said administrators. *Fi. fas.* were issued upon these judgments and levied upon certain property of Chandler, deceased, which brought at sheriff's sale $1,990 00. These judgments were founded upon debts which were of equal dignity, in the distribution of estates, at the date of Chandler's death. Those having the younger judgments ordered the sheriff to hold up the fund until its distribution was ordered by the Court. Dupree being dead, his representatives ruled the sheriff to shew cause why he did not pay over said fund to satisfy their older judgment.

He replied the foregoing facts. There being no denial of these statements, and nothing else appearing, the Court held that the fund should be paid to all of plaintiffs in *fi. fa. pro rata.* The representatives of Dupree assign that order as error.

TOOMBS & DUBOSE, for plaintiffs in error.

W. G. JOHNSON, JOHN C. REED, for defendants.

WARNER, Judge.

This was a rule against the sheriff for the payment of money in his hands, arising from the sale of the intestate's property, on the following statement of facts: Dupree obtained a judgment against James M. Chandler, administrator, and Susan Chandler, administratrix of James O. Chandler, deceased. Three other plaintiffs had obtained judgments against the administrator and administratrix of James O. Chandler which were of younger date than Dupree's judgment. Executions had issued on these judgments, and were levied on the property of the intestate, which was sold by the sheriff for the sum of $1,990 00. The representatives of Dupree claimed that the money arising from the sale of the intestate's property in the hands of the sheriff should first be applied in satisfaction of their judgment, the same being of prior date. The other plaintiffs in *fi. fa.* claimed that the money in the hands of the sheriff should be distributed and paid *pro rata* to all the executions in the hands of the sheriff, without regard to the dates of the respective judgments, inasmuch as the notes on which the judgments were founded were of equal dignity at the time of the intestate's death. The Court decided that the money in the sheriff's hands should be paid *pro rata* to all the executions, without regard to the priority of the date of Dupree's judgment. Whereupon the counsel for Duprees' representatives excepted.

When a judgment is entered against an executor or administrator who is sued in his representative character, except when he pleads *ne unques executor*, or a release to himself, or *plene administravit*, or *plene administravit preater*, and his plea is found against him, such judgment must be entered *de bonis testatoris*. In this case, so far as appears from the record, the judgments were all rendered against the property of the intestate in the hands of his administrators, without any plea of want of assets in their hands to pay all the intestate's debts, and the legal presumption is, that they had sufficient assets in their hands for that purpose. The property of the intestate was sold by the sheriff under executions which issued on these judgments, and the question is, as between these judgment creditors, who has the prior lien upon the money in the sheriff's hands arising from the sale of the intestate's property, as between each other? The administrators of the intestate were not parties to this controversy, but it is simply a contest between the judgment creditors, who have obtained their judgments since the intestate's death, as to the *priority* of their respective judgments. If a bill had been filed by the administrators to marshal the assets of the intestate's estate on the ground of insolvency, or other sufficient reason, then, the debts of the estate would have been decreed to be paid according to their dignity at the time of the intestate's death, or if under the provisions of our Code, the junior judgment creditors had, by petition with proper allegations, made it judicially appear to the Court that the intestate's estate was insolvent, or shewn some good reason why the money in the sheriff's hands should not be paid to the judgments according to their *legal priority*, but according to the *dignity* of the debts at the time of the intestate's death, then the question as the *dignity* of the debts might have been properly considered. In order to defeat a legal lien, some good reason must be shewn; for it is a general rule that when different persons hold a lien on the same property, of the same dignity, then the *oldest lien* shall have the preference. As

between the judgment creditors in this case, the oldest judgment was entitled to be first paid, there being nothing in the record going to show any reason why the debts of the intestate should be marshaled and paid according to their *dignity* at the time of his death, or that there was not sufficient assets in the hands of the administrators to pay all the intestate's debts.   Our judgment is confined to the statement of facts made by the record in this case.

Let the judgment of the Court below be reversed.